Electronically Filed
Intermediate Court of Appeals
CAAP-13-0003520
12-JUN-2015
08:10 AM

NO. CAAP-13-0003520

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

DIANE SMITH, Petitioner-Appellee,
v.
JAMES R. SMITH, Respondent-Appellant.

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-DA NO. 13-1-0083)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

Respondent-Appellant James R. Smith (James) appeals from the "Order on Evidentiary Hearing Held July 16, 2013" entered on August 20, 2013 in the Family Court of the Third Circuit (family court).[1] On February 6, 2013, Petitioner-Appellee Diane Smith (Diane) submitted a Petition for an Order for Protection (Petition) pursuant to Hawaii Revised Statutes (HRS) Chapter 586 against her ex-husband James. The family court issued a temporary restraining order (TRO), and subsequently conducted a hearing on the Petition on February 19, 2013.[2] The family court then entered an Order for Protection pursuant to HRS § 586-5.5 (2006), which ordered James to continue to vacate the residence, and also restricted him from contacting or threatening Diane, passing within 100 yards of their residence,

_____

[1] The Honorable Diana L. Van De Car presided, unless otherwise noted.

[2] The Honorable Anthony K. Bartholomew presided and issued the order.

or coming within 100 feet of her, to remain in effect until February 5, 2016.  After a further evidentiary hearing on July 16, 2013, the family court ruled that the Order for Protection shall remain in full force and effect.

On appeal, James contends the family court erred when it: (1) misstated that James had the burden to show why the TRO should not continue, despite the court's later correction on that issue; (2) ordered James to vacate the residence; and (3) found that domestic abuse occurred or was likely to recur.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve James's points on appeal as follows and affirm.

**(1)** In its August 20, 2013 written order, the family court corrected its prior misstatement of the applicable burden of proof during the July 16, 2013 hearing.  We thus conclude that the family court's misstatement during the hearing was harmless error.

HRS § 586-5.5(a) provides:

> **§ 586-5.5 Protective order; additional orders.** (a) If, after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the order should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse, the court may order that a protective order be issued for a further fixed reasonable period as the court deems appropriate.

"[T]he order to a respondent to show cause is a direction from the court to appear at a hearing to answer and to respond to the petition's allegations, rather than a mandate which places the burden on the respondent of initially going forward with evidence to prove the negative of the allegations."  Kie v. McMahel, 91 Hawai'i 438, 442, 984 P.2d 1264, 1268 (App. 1999).

Hawai'i Family Court Rules (HFCR) Rule 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise

> disturbing a judgment or order, <u>unless refusal to take such action appears to the court inconsistent with substantial justice</u>. The court at every stage of the proceeding <u>must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties</u>.

(Emphasis added.) The question is therefore whether the family court's initial misstatement of the burden of proof resulted in substantial prejudice to James. <u>See</u> <u>In re Doe</u>, 100 Hawai'i 335, 343, 60 P.3d 285, 293 (2002).

During the hearing on July 16, 2013, the family court told James that it was his burden to show why the Order for Protection should not continue. The family court did not reference the applicable burden in giving its oral ruling and there is no indication that it relied on the wrong standard in reaching its decision. Other than generally claiming that the family court's error affected his tactical decisions during the hearing, James does not explain what he would have done differently or how the court's misstep affected his presentation of evidence.

Moreover, in its August 20, 2013 written order, the family court acknowledged its mistake and clarified that Diane "has the burden of proving the allegations in her petition, i.e., that a protective order is necessary to prevent domestic abuse as defined in § 586-1 or a recurrence thereof; the court finds that Petitioner has met this burden by a preponderance of the evidence." Thus, it is clear that the family court applied the correct burden of proof and the misstatement did not affect the outcome. <u>See</u> <u>SC v. IC</u>, No. CAAP-11-0000398, 2012 WL 3555417 at *5, 128 Hawai'i 130, 284 P.3d 223, (App. Aug. 16, 2012, amended Sept. 12, 2012) (SDO) (concluding that the admission of certain challenged exhibits was harmless error where there was no material or substantial effect on the family court's decision).

Given the record in this case, we conclude that the family court's initial misstatement of the applicable burden of proof did not affect James's substantial rights and was therefore harmless error.

**(2)** The family court did not abuse its discretion by ordering that James vacate the residence. HRS § 586-5.5(a) provides that a protective order may be issued for a "fixed reasonable period as the court deems appropriate[,]" and may include orders stated in the TRO, which can include enjoining the respondent from "[e]ntering or visiting the protected party's residence." See HRS § 586-4(a)(3) (2006). James does not offer any substantive argument regarding the family court's alleged error, and it is therefore waived. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7). Even if we were to address the issue, James does not present any legal authority in support of his argument or point to anything in the record indicating that the court may have abused its discretion. Although James and Diane own the residence as joint tenants, it appears that James had been in and out of the hospital and residing at various care homes. Given the lack of any cognizable legal argument suggesting otherwise, we conclude that the family court did not exceed the bounds of reason or disregard rules or principles of law, and accordingly did not abuse its discretion. See Coyle v. Compton, 85 Hawai'i 197, 206-07, 940 P.2d 404, 413-14 (App. 1997) (holding that HRS Chapter 586 does not unreasonably infringe upon a person's freedom of movement); Lite v. McClure, No. 29107, 2009 WL 1263099, at *2, 120 Hawai'i 386, 206 P.3d 472 (App. May 8, 2009) (SDO) (holding that the family court did not abuse its discretion by setting a ten-year term for a protective order "[i]n the absence of any legal impediment to a term of ten years").

**(3)** The family court's findings of past domestic abuse and that a protective order was necessary to prevent future acts of domestic abuse were supported by substantial evidence, and were not clearly erroneous.

> [T]he question on appeal is whether the record contains "substantial evidence" supporting the family court's determinations, and appellate review is thereby limited to assessing whether those determinations are supported by "credible evidence of sufficient quality and probative value." In this regard, the testimony of a single witness,

4

> if found by the trier of fact to have been credible, will suffice.

In re Doe, 95 Hawai'i 183, 196, 20 P.3d 616, 629 (2001) (citations omitted).

"Domestic abuse" is defined, in part, as "[p]hysical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault, extreme psychological abuse or malicious property damage between family or household members[.]" HRS § 586-1 (2006).[3]

"Extreme psychological abuse" is defined as "an intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual, and that serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer extreme emotional distress." HRS § 586-1.

Diane alleged that James engaged in a course of conduct that continually bothered her, which included leaving threatening voice messages, arguing with her, and accusing her of stealing his mail and possessions.

In her initial Petition for a protective order, Diane asserted that James's physical and mental issues had been worsening since August 2012 and that he had been in and out of treatment several times. At the July 16, 2013 hearing, Diane provided more detail about James's behavior, testifying that he had "become erratic due to severe bipolar disease and dementia, and his aggressive and hostile behavior has escalated[]" and that he "has been advised that he needs 24-hour supervision in a care home. . ." She testified that James made several threatening phone calls demanding possessions while in the hospital, including one in which he warned "[d]on't make me break the door down." According to Diane, James signed himself out of the care home and returned to their residence on January 10, 2013. During

---

[3] Diane and James fall within the definition of a "family or household member" under HRS § 586-1, which includes former spouses.

this time at their residence, James "became very agitated, angry and threatening" and claimed that Diane had stolen or thrown away some of his valuable possessions. Diane stated that James pushed her once and raised his metal cane, yelling "[i]t's my house and I can do anything I want." James was readmitted to the hospital on January 20, 2013, and he continued to leave long messages harassing Diane. Diane feared that James's behavior would worsen if allowed to return to the house, and the record indicates that she filed the initial Petition because James said he would be coming home soon.

Diane further testified that since the TRO had been in effect, James had called the cable company trying to get her utilities cut off, withheld mail, reported her to the police for various offenses, and violated the TRO by sending her mail directly. Diane claimed that "[g]iven his mental deterioration and hostility I would never again feel safe [] to be alone with him."

In addition, Shelly Shepherd, a friend of Diane's, testified that she once witnessed James pin Diane up against a wall, and also stated that, in her view, James had become increasingly agitated and aggressive towards Diane, and was causing Diane a great deal of mental distress.

The family court found that Diane "has met her burden of proving, by a preponderance of the evidence, that a protective order is necessary to prevent domestic abuse or a recurrence of domestic abuse[]" and that "[t]here was sufficient evidence presented at the hearing which the court finds credible that, that it is more likely [than] not that a protective order is necessary to prevent 'domestic abuse.'" Based on the record, there was substantial evidence to support the family court's finding that there was past domestic abuse and that the protective order was necessary to prevent future domestic abuse.

Therefore,

IT IS HEREBY ORDERED that the Order on Evidentiary Hearing Held July 16, 2013 entered on August 20, 2013 in the Family Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, June 12, 2015.

On the briefs:

Mirtha Oliveros
(Oliveros Law, LLLC)
for Respondent-Appellant

Diane Smith, Pro Se
Petitioner-Appellee

Presiding Judge

Associate Judge

Associate Judge